On today's docket, we have cause number 24-40065, the United States of America v. Ahmed Abdallah Allam, and I'm sure I'll stand corrected on that pronunciation. Is the appellant ready to proceed? You may. May it please the Court. Good morning, Your Honors. Elizabeth Emanuel on behalf of the appellant in this case, Mr. Allam. I know this Court, and specifically the members of this panel, have by now had occasion to hear challenges to nearly the entire portfolio of 922 subsections. And we've heard a few. Yeah, to put it lightly. But this panel is the first in this Court and in any of the circuits to consider the constitutionality of subsection Q2. And the only question here is whether the government has met its heavy burden to prove that disarming a regular citizen whenever he knows he is within a thousand feet of a school's property line is consistent with this nation's history and tradition of firearm regulation. If it has not, Q2 cannot be constitutionally applied to Mr. Allam. We're the first panel in this Court, but it is true the Second and the Ninth have addressed the sensitive place doctrine generally, correct? Correct, just not this statute, the federal statute. And the logic of your position would require us to disagree with those two circuits? I'm thinking about Wolford on the Ninth and Antoniuk on the Second. I don't believe so, Your Honor, because neither of those cases addressed the buffer zone, the idea of buffer zones around sensitive places. But they're huge, broad things, parks, zoos. Yes, they are. Well, are we dealing with a sensitive place? Are we dealing with a buffer zone? Or does any of that even matter under Bruin and Rahimi? I think it's—obviously the courts have used the Supreme Court's language in Heller and then in Bruin that this—what is a sensitive place? Courts really struggled with that definition and oftentimes avoided it. No court has struggled with it when applied to schools, right? That's been the rock-bottom core of a carve-out from the Second Amendment. Am I wrong? Can you think of any circuit that said schools aren't in a sensitive place? No, no circuit. So it is—to answer, I think, the question from Judge Wilson is this. Does your argument then depend on this isn't a school because it's near a school? It does, Your Honor. I mean— Is that—that is your argument to us? I will backtrack there. The government still has the heavy burden under Bruin and Rahimi to prove with historical evidence that there is a tradition of— Well, I'm just going to interrupt because I'm not sure about that, right? That's a step two analysis, finding the historical—and that is what the district court did, the polling place and the buffer around a polling place. But the sensitive place doctrine, at least as we noted in McRory, that's a step one analysis. In other words, the Second Amendment doesn't apply. The Supreme Court has said we can let the Supreme Court change its mind, but it doesn't apply to sensitive places. Like courts. There's no—no one's doing the history. They're just courts, legislatives, polls, schools. Doesn't apply. Step one. I believe that misconstrues the step one of Bruin and Rahimi, which is this—which is looking to the person, the gun, and the conduct. Well, that's back to my question. Do we have—do sensitive places fall under the Bruin analysis? Maybe in light of what the Supreme Court has said in Heller and in Bruin and carried forward in Rahimi, or are we at step one or step zero even? We don't get there because the Second Amendment just doesn't apply to sensitive places.  This is a step two issue because, as this court knows in Diaz— But why? What is the support for that? Because the Supreme Court clearly says nothing in Bruin, nothing in Heller, casts any doubt on longstanding prohibitions on firearms and, you know, various things. Yes, but— And it seems to carve out this sensitive place idea. Right, but what the Second Amendment does is regulates conduct, and Mr. Allam was carrying a firearm for self-defense in a school zone. That is plainly under the plain text of the amendment. That is all that is considered at the first step. But you're fighting—you're fighting the Supreme Court's carve-outs. Yes. Because they haven't done that for what they've carved out. What I'm doing is following the Supreme Court's own analysis. But in Bruin, which is the latest, most authoritative decision, they said sensitive place still exists until it's abused, unless there's evidence that it's the citywide, it's the entire French Quarter. But this guy's—your client's a couple feet away from an elementary school. Correct. Bruin said that it still must have this historical basis. The sensitive place itself must—either you can analogize to the sensitive places that it identified by using the historical regulations and looking to how and why they burdened the right, but it's still a second—a step to inquiry. And as this court knows in Diaz, it went forth and did not assume it's settled just because of Heller's dicta that G-1 was constitutional. It looked— Well, so there's another step zero inquiry also. And, I mean, this statute doesn't disarm people like Elam. There's an exception there that says you can get a license. And if you have a license, you can carry it even in a school zone. So do the exceptions basically allow us to avoid the Bruin analysis whatsoever and say, well, look, this really isn't a material restriction on the right to bear arms? I don't believe so because under the plain text, his conduct still falls under the Second Amendment. There's still— But he's not disarmed. He could have gone and gotten a license to carry in a school zone from the state of Texas. Correct. But he was traveling out of state at the time. But it applies to non-residents. A non-resident can apply, but by the time he was there, I don't know— He had time to spend hours and hours each day for, like, several weeks, 40, 50 feet from the school. Why couldn't he have gone and gotten a license, and then this statute wouldn't even apply to him? I don't believe that this is—that the government has even adopted this argument. But we're interpreting the statute, and the question you're being asked is subsection B has over a half dozen exceptions. So you aren't disarmed if any of those exceptions apply. There are two big, giant ones. One is if you're on private property. So the map that one of the amicus briefs has of Dallas doesn't seem relevant because a lot of that land is private property. Those people can still have their guns. The other one is the one Judge Wilson's asking. He actually could go get a Bruin-approved permit. He isn't disarmed. He just didn't do it. Correct. But none of those exceptions applied to Mr. Elam. Because of his inaction. He doesn't show that he couldn't have gotten a license or would have been denied a license, has he? I don't believe that in the lower court that we allege that. But nonetheless, the government still has the burden of proof in this case. We're up a year before us, I think, on a conditional guilty plea. Right? If the motion to dismiss was denied, then you pled guilty conditionally to be able to come up to us. So the question is, is the conviction valid? Isn't that what we're trying to answer? Yes. And we're looking at the conviction under 922Q, and we could avoid any constitutional question, this line of questioning is, if, in fact, he had protection against exactly the Second Amendment infringement he's now arguing. I still believe that that subsection and that exception would have to be justified with reference to historical regulations. This is not a shall-issue state. No, it is. Well, they are shall-issue. But the government has not produced any historical evidence to support a shall-issue regime, if that is how the court is going to look at this statute. Well, let's look at something that may be a step-two issue. And the district court really concentrated on the facial challenge. And because the facial challenge failed, the district court ruled basically the as-applied fails. But here, I don't take your argument really to be that, you know, guns in schools is an infirm regulation, or at least prohibiting guns in schools. It's more this school zone or the buffer zone or the sensitive area, how far does it extend. But he was across the street from the school. So, in an as-applied challenge, I mean, this seems very clearly to fail. I mean, it passed constitutional muster. I mean, the statute does as applied to him because he was adjacent to a school. I mean, it's hardly an extension of historical tradition of keeping guns out of schools to say you can't have them across the street either. Why do we need to go farther? Because there must be a line somewhere. But we don't have to test that line if the as-applied challenge to him fails. Correct. But taking that presumption, there are streets all across the United States that run adjacent to schools. In cities in particular, some cities are so dense with schools that there is no— Well, this is the argument that— I understand. Football fields is too much or whatever, but he was literally across the street from the school. Correct. But he was there, and he was parking his vehicle there. That, his conduct, had nothing to do with the school itself. So in order to justify the sensitive place regulation, there must be some sort of historical evidence that legislatures understood or the ratifiers understood that guns could be prohibited near courthouses, near polling places. Well, the district court detailed a lot of that. It did, but humbly I would disagree with the conclusion that they made about the buffer zone around election polling places establishing a tradition at all. They cited one constitutional provision from Delaware that was passed in 1776 well before the ratification of the Second Amendment, and no other colony or local jurisdiction had a similar provision, as far as we know, based on what the government and the court presented. The district court emphasized that this was a relatively new societal problem, and therefore, in that context, Bruin allows this more nuanced approach. The district court repeatedly went back to that phraseology. What does that mean? I believe that that entails, that really comes down to the scope of the analogy. Well, does it require fewer historical analogs? Does it require, like, less, I mean, because the Supreme Court has talked about how, well, three states may not be enough, or three colonies may not be enough, but, you know, in some cases, they seem to say, well, it would be enough. We talked about, I mean, in the briefing talks about, the district court talked about these colleges that said no guns, no guns by students, even if they were off campus. But, I mean, is a more nuanced approach, does that mean that three colleges that do that is enough, or is it, I mean, I'm just trying to understand what we're trying to do here. Right. I would understand that more nuanced approach to be about, not about what establishes a tradition, but what the analogy is, how far can we go. How far can the analogy go? How relevantly similar, correct. And I don't adopt our amicus' opinion that under Bruin, this must be a distinctly similar regulation, but it still must be relevantly similar. I ask you a couple questions, just to try to clear out some easy stuff, maybe. You don't dispute that persons can be disarmed on school grounds, on the school grounds itself, or you do dispute that? I don't have any sort of authority to make that case, but it's still, under the principle of party presentation, I don't believe the government has met its heavy burden in that respect. Okay, maybe, I'm just trying to clear out some stuff. You're not saying that the government has to come up with a historical law, and the district court can't itself on its own research, or you are saying that? I believe the district court can. I don't believe that the historical testing must be done at the district court level. Of course, this court knows that it has had to make a lot of those calls itself. And just quickly, time, the motion to dismiss was denied two years ago, so there's been a lot of Second Amendment law. I mentioned the two circuits that seemed to me in friction with your position. Do you have any circuit law that, since the motion was denied, that favors your argument, what I'll call the buffer zone argument? I don't believe any of the federal appellate courts have addressed a buffer zone in particular. Do you have any authority at all that you would point us to at the circuit level, since this was denied, that favors your position? I believe Wolford and the Second Circuit case, Antonyuk, I'm not sure how to pronounce it, both required historical evidence. They assumed that schools were included as sensitive places. But for each particular place listed in those states' licensing, or sorry, in those states' statutes, they had to come up with an analogy there. I see that I'm very much out of time. Thank you, counsel. Good morning. May it please the Court. Mahogany Reed for the United States. Section 922Q2A imposes a limited restriction on firearm possession within 1,000 feet of a school. Individuals with a state-issued license to carry may do so without restriction anywhere within the school zone. Here's the problem, I guess, with that. I wanted to ask your side. Texas is a shall-issue state. It's constitutional carry. So people can carry without a license at all. So there's an incongruity to me in states with more permissive carry regulation, or lack thereof, in this statute. Because fewer people in Texas are going to have a license, so more of them are going to fall under 922Q2, right, than in a state with more restricted licensing regimes. How can that square? I mean, I think it squares because, well, I want to mention that Texas's constitutional carry provision is two years old, and, you know, the license to carry provision is much older. But hasn't Texas basically licensed all of its citizens to carry? They've licensed all of their citizens to carry handguns without restriction. Does that count under 922? I'm sorry? Does that count under the exception in 922Q? It does not, no. We think that an individual has to possess. But I think because Texas is a shall-issue state, that, you know, there's really no incongruity there, right? Maybe step back. What are you arguing? It really would help me, given the Second Amendment flux, to know what the government's argument is. Are you defending the district court's opinion, and that's a step two historical twin finding, and the government agrees that's how we should decide it? Are you saying this is a step one case, and there are school carve-outs, school plus carve-outs? Or did you argue ever anywhere that this is constitutional because of the savings provision in subsection B? What's the government's argument? Our primary position now is that section 922Q2A comports with our nation's historical tradition of firearm regulation under step two, both because we've established a historical tradition of prohibiting firearms around sensitive places, and also specifically in this case because of Mr. Alam's proximity and physical location relative to the school, we think that this is— You're defending—good for you, that's an answer. You're defending the district court's—your primary position is the district court's 50-page historical analysis. I mean, we disagree with certain aspects of the district court's 50-page historical analysis, but we agree with the bottom-line conclusion that section 922Q2A is consistent with our nation's historical tradition— And just tell me what the best, quote, twin is. Yeah, well, if I may, because I've gotten in trouble identifying a twin before in various courts, I do want to just emphasize that we think that all the historical analogs we outline in our brief should be considered together under REHME, but I think that the best category of analogs would be the polling place restrictions, and we think that those reflect a long-standing historical tradition of limiting or firearm possession— in fact, prohibiting firearm possession around certain sensitive places. We cited in our response to Mr. Olam's 28-J letter, a district court opinion, not dispositive, but it includes a few citations to additional sensitive place or buffer zone restrictions that are like those that we include— But the polling place, I mean, election day is once, twice a year, maybe three times if there's a runoff. And otherwise, it's perfectly legal to carry around polling places that are not being used for election, very limited time duration. The district court discounted that and said it's not dispositive, but this is 24-7, 365, three football fields plus around schools. How is that relevantly similar? I think the exceptions render it certainly less burdensome than the sort of complete prohibition that the polling place restrictions did impose on election day and the 24 hours before and 24 hours after per the Delaware constitutional provision. But I also think that the district court was right when it observed that school activities or school-related activities are not as temporally limited as registration or polling place activities. We have school activities not only during the school day, but on weekends, on evenings, basketball games, volleyball games, school dances. All those things are happening all the time. Schools are a hub of activity that concentrate children and teachers. It sounds like you know this area well. There have been the two circuits that have come up are Wolford and Antoniac. Yes. But you heard counsel opposite point out those are actually just the places. They are not the plus factor. So are you—first of all, first question is, do you defend the logic of the Ninth Circuit in Wolford and the Second Circuit in Antoniac? Yes, we defend the logic of those circuits primarily because they did engage in an analogical sort of reasoning that accounted for the sensitivity of the places themselves. So is she right that the sensitive place carve-out that I see in Heller and Bruin is still a step two inquiry? It has to be justified historically? Or is the government's position that there are carve-outs that it's up to the Supreme Court to revisit that keep us out of the Second Amendment world altogether? I actually think we agree with the other side that the sensitive places doctrine is historically based, right? The Supreme Court in Bruin discussed sensitive places in the context of describing how historical analogizing at step two should work.  I guess my question—I should be more clear in my question. Do you agree that it's historically based because the Supreme Court has said it is? Or do courts every time have to redo it? I think it's historically based, but those places specifically are settled. And so I don't think that the government has to— By the Supreme Court. By the Supreme Court. So the government doesn't have to re-litigate. I really appreciate this, but then what about the plus factor? It's 1,000 feet beyond the sensitive place. That's really, to me, the hardest aspect of this case. Yeah. I mean, I think we do think that specifically— and I want to emphasize the point that Judge Wilson seems to make, which is that this is an as-applied challenge, and we think that as applied to the facts of this case, given Mr. Alam's physical proximity to the school and his physical positioning relative to the school building and school grounds, he was for all intents and purposes within the school or falls within the carve-out that the Supreme Court— Let's say you're standing on the ellipse outside of the White House or you're in the plaza in front of the Supreme Court. Where is the limiting principle? I mean, this sort of almost bleeds into a vagueness issue. Yeah. I do think that the further away you get from the— well, I think the ellipse itself may be owned by the government. I'm not really sure. But to the extent we're dealing with just public property, I think the further away you get from the sensitive place— How do we write that? Further away? I don't think you—I actually don't think you have to write that because, like I said, I think the historical tradition of prohibiting firearms around certain sensitive places— You saw the amicus map of Dallas. I did. And you probably read that this is what New Orleans was considering. Oh, there happens to be a school in the French Quarter, 1,000 feet, covers most of the French Quarter, no guns. Right. Well, no guns subject to having a license to carry a firearm. Yeah, but I haven't seen any court really yet rely on that. We're probing it. So isn't that exactly what the court was worried about in Bruin when it says you can't abuse this sensitive place and start enlargening a locational restriction? That's why I keep asking you, how do we write it? Yeah, yeah, absolutely. The Supreme Court was concerned about abuse of the process. I just don't think that 922Q2A is an abuse of that process because of the exception. But to get there, we've got to go through the historical analysis, correct? And I don't see anything in the historical analogs except maybe in Georgia where they said students can't have guns elsewhere, even off campus. There's not very much that says 1,000 feet, 50 feet. I mean, there are a couple things— I mean, I guess King Henry said 2 miles near a courthouse or whatever. But to establish a historical tradition of buffer zones, where do we get that? I think we can start with the sort of statute of Northampton analog that originated in Wells that prohibited a firearm within 2 miles of a court. We have the Delaware constitutional provision, which I would— But the Delaware constitution, that's the only state colony that became a state that had something like that, right? Yes, but then there's a—I think that's sufficient specifically because— Well, the Supreme Court says it's not sufficient. They said two or three states are colonies, not a historical tradition. Well, I think that's an important point. The Supreme Court said that in the context of an attempt to use two or three historical analogs against the contrary weight of historical evidence that disproved, in that case, New York's reliance on those statutes. I think the Ninth Circuit's discussion in Wolfer v. Lopez does a fantastic job of setting out why, in the context of location-based restrictions, absent any evidence that there was a dispute as to the constitutionality of— Because there may be silence at the founding, but these latter 19th century restrictions were contrary to the silence. They were consistent with what little we had. Exactly. They were consistent with the sort of common law analogy from the statute of Northampton, analog in Wells, the Delaware constitutional provision, and then— But again, the statute of Northampton was court, not schools. Right. But the court is a sensitive place. And I think our principle is broader than the government can prohibit firearm possession around schools. I think this is true of sensitive places that the Supreme Court— and we'll limit it to the sensitive places the Supreme Court has assumed the constitutionality of. But you can't just interpose around, near, proximate, within the word in. And I think, to some degree, the government's position elides that a little bit. It's not necessarily that we're trying to read Bruin like a statute, but I do think it's different to say no guns in schools, where we had examples of that, and then we get, like to Judge Higginson's point, the buffer zone, the adjacent. How far can you go before you traverse the Second Amendment? I mean, I guess this is the nuanced approach that the district court engaged in. Is that what we're talking about? I think that's right, Your Honor, but I do think I want to sort of bifurcate, I think, what our positions are in this case. We think that the history and tradition of prohibiting firearms around certain sensitive places, up to two miles in some cases, is sufficient— One case. Well, I mean, I have the Louisiana, Maryland, and Texas statutes. They're post-founding, but they're consistent with the founding-era tradition of prohibiting firearms around— The firearms from the 1870s, 1880s. That's right, Your Honor, but they are consistent. And again, in Bruin, location-based restrictions that are late arising, post-founding, can be sufficient, certainly were sufficient enough for the Supreme Court to say that the constitutionality of courthouses, which relied on sort of two post-founding statutes, was sufficient to settle the constitutionality of that place. That aside— Back up a little bit. I mean, I mentioned the nuanced approach. Do you agree with counsel opposite basically saying that it's not so much lessening the historical tradition that has to be shown, it is allowing a stretch for the analogy? Is that right? Yeah, I think that's right. I think it is—I mean, the Supreme Court has repeated that historical twins and dead ringers are not required, but what the more nuanced approach suggests is that there has to be some contemplation of a slightly looser analogy to account for changes in societal circumstances, and that's what the district court was getting at. Sure, there are no founding-era analogs that prohibited firearms in a buffer zone around a school or that no founding-era analogs that prohibited firearms within two miles of a legislative assembly necessarily, but because there was this founding-era tradition of prohibiting firearms around other sensitive places, we can reason by analogy to say that, well, schools are sensitive places, and so it would not be inconsistent with our nation's historical tradition of firearm regulation to erect a modest buffer zone around schools and still permit firearm toting within the buffer zone itself under the exception. It's interesting. As I see it, there are two hard issues. One is what I call the carve-out problem, and clearly you know the law well. In other words, you know Heller-Bruin carved out a bunch of things, and we have since, and Diaz said, well, the felon prohibition, that's just dicta. It's not binding. But then in Hollis and cases after that, we've said, oh, but the dicta about dangerous and unusual guns, that's still binding. And we said in McCrory, oh, the dicta about background checks, that's still binding. So this case presents us with the school, the sensitive place doctrine. Right. And I don't have much difficulty saying, because I don't even hear much opposition, schools are sensitive places. Right. So I don't think we've got that much more work to do. The Supreme Court said it. The trouble is the two leading circuits, 9th and 2nd, don't appear to be dealing with buffers. So I'll turn this into a question for you. The only case that I found, circuit level, that was instructive on buffers is the DC circuit case class. Yes. Which is still under the means balancing test. But there it's Griffin and Garland, very respected jurists. And they used the phrase, if it's, quote, sufficiently integrated. Does that survive Bruin? Can we use that analysis? Is the government embracing it, if you even know what I'm talking about? I'm guessing you do. I do. And we agree with the district court that class's assessment of the class's sensitive place analysis does survive Bruin. I think the DC circuit was very clear that it was limiting its analysis to, didn't need to stray into the means end analysis or balancing approach. A couple of points about class. We think that class relied on three facts to say that the parking space near the Capitol building was sufficiently sensitive to permit disarmament within it. One that I think especially applies here is the proximity question. The DC circuit, I think that was one of the second factor the court discussed. It explained that given how close the parking spot was to the Capitol building, the sensitivity concerns that animate prohibiting firearms within the building extend to the parking space outside of the building. I think that piece of the discussion is particularly salient. This is very helpful. Two questions. Is that encompassed with their phrase sufficiently integrated? It would seem to me it is. That may be a more legalistic defined world. But at the same time, then, what do you do with post offices? And people are driving into post offices every day and they have their guns in their cars. Are they committing a felony every time they park in the parking lot? I think the sensitivity and proximity discussion was separate from the integrated discussion, which was a separate factual consideration. I have to look then. And I think that the court did ultimately consider all these facts together. But the sensitivity and proximity question was separate on my read of class. That doesn't necessarily apply here because we're dealing with a public space that wasn't on school property, wasn't directly connected with school property. OK. Well, zeroing in on the issue of post offices, which are sensitive places, but they're parking lots. Yeah. I think that we have the cases of Bonaty and DeRosen, which say that the parking space is. DeRosen. Jeez, I can't imagine DeRosen would be good law today. Do you think it would? I'm just really worried about all the people that have guns in their cars to protect themselves. And they swing by to drop off their taxes. Are they felons for the few minutes they drive into the lot? If their firearms are, yes is the answer. But I think that we don't really have that concern in this case. And I think that's because of the exception. And I think I've hammered the exception to death. And so I won't spend too much time on that. What are your thoughts? Because we peppered you, or I peppered you. But what about the line of questioning we asked, which is, if you integrate 922QB with Texas's regime, even if that hasn't been your argument, it's the law, possibly. Intellectually, are you able to tell us if that would be a misdirection? You see what we were asking? In other words, Alam could have applied to get a permit. It's a shall-issue state. Can we use constitutional avoidance to avoid this big Second Amendment question by saying, it's a valid Bruins shall-issue state? End of story. Yes. I think you can go that route. And I don't recall whether we emphasized the point below that Mr. Alam could have applied for a license to carry in the state of Texas. But that's certainly true. And there's no evidence in the record that he applied for a license to carry in the state of Texas. There's no evidence that he even had a New York-issued license to carry. All the facts indicate that Mr. Alam up and bought a firearm, a semi-automatic rifle, and 150 rounds of ammunition in the state of Pennsylvania, made his way to the state of Texas and posted up outside of an elementary school for a week. Almost looks like he wanted to get caught. That is what it looks like in some respects. But everything in the record sort of reflects that he was in a position physically proximate to the school, such that he disrupted the school's activities. And he was in a position and fully prepared to engage in a targeted attack on the school. And so all those facts combined, I think, readily resolve Mr. Alam's as-applied challenge. I think that's why the district court dismissed or rejected Mr. Alam's as-applied challenge in a footnote. Because it's very clear that the statute is constitutional as applied to him. And I think the general buffer zone law is also consistent with our nation's historical tradition of firearm regulation. But you don't really need to go there in this case, given how clear cut of a case this is. Unless the court has further questions, we ask you to affirm the district court's judgment. Thank you, counsel. Rebuttal. Your Honors, I want to focus on something that opposing counsel said. When Judge Higginson, you asked her, what is your best category of laws? And she said the buffer zone statutes around election polling places. And we know that the historical evidence in this case only provides one single provision from the founding era. And even if you read the text of that statute, the buffer zone provision only applied to militia assemblage. So that was really more about, it didn't prevent individuals from walking around in the public square around the polling place if they had voted two hours earlier. You're talking about the Delaware provision? Absolutely, yes. Counsel, the government ended its argument on talking about the difference, talking about an as-applied challenge versus a facial challenge. I just want to be clear on which one it is you're raising today. We are raising an as-applied challenge. An as-applied challenge. Correct. I don't believe that under Salerno that we could meet the standard for facial challenge. All right. So I also want to go back to class. And admittedly, I haven't re-read that case in quite a long time. But in terms of the sufficiently integrated, I think if you go to Washington DC and in the area around the Capitol building, that phrasing makes sense. The entire Capitol grounds is very much sufficiently integrated with the function of that building and the function of our federal government. Here we have an elementary school next to a church, and then the public roads that run against it. These roads have no, the use of the roads are to go around the town. They're not sufficiently integrated with the education that is happening behind the walls of those schools. So that's kind of how I would distinguish that if the court finds that. That is really relevant here. But you know, I'm not so sure that's right. Because isn't there record evidence that the kids went across the Berry Street he was parked on to go to chapel like several times a week? And there were other after school events that they were going organized as groups across these streets. So doesn't that mean that the adjacent roadways like literally surrounding the school could be sufficiently integrated? I believe it's possible, but I don't believe that. I mean, were there crossing guards that were letting kids cross when school was getting in and getting out each day? Allegedly that's the, based on the facts in the PSR, that is a practice of the school. But we really have to focus on the temporal nexus. Here is that Mr. Alum was arrested and only admitted to being in possession of a firearm on Sunday at, I think it was around 8 or 9 p.m., which was when he was arrested. At that time, the roads next to a school are not sufficiently integrated, if we can use that phrase again. There were no children present and no school activity taking place. You probably know, and I should have checked, 922-G, I mean the letters, they just go on forever. There are a lot of crimes. Some of them are status crimes. Are there any other locational restriction in 922? Not that I'm aware of. There would be Q3, which is also part of the Gun-Free School Zones Act, which restricts the firing of weapons within a school zone. Interesting. So it's just schools, it's the only locational restriction? Yes, I believe so. And I also want to address this issue of dangerousness. There is no... Counsel, you recognize you're out of time. Oh, sorry, I'm sorry. I apologize. All right, thank you. Thank you. All right, the court will take this matter under advisement. This concludes the cases that are on today's docket. We are adjourned.